**Franz A. Wakefield,** *Pro Se*
**COOLTvNETWORK.COM™, INC.**
**The *ClickVideoShop*™ Patent:** U.S. 007,162,696 B2.
17731 North West 14th Court
Miami, Florida 33169
Tel: (305) + 624.3282
FranzWakefield@cooltvnetwork.com

FILED

*IFP*
*NP*
④

2009 NOV 17  P 2: 40

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA.-SAN JOSE

ADR

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA.

FRANZ A. WAKEFIELD,

                                    Plaintiff,

                    v.

APPLE INC.,

STEVE JOBS,

And

SARAH JESSICA PARKER

                                    Defendants,

Case №:

# C09   05420 HRL

**COMPLAINT**

**FOR TRADE SECRET MISAPPROPRIATION, RICO COPYRIGHT INFRINGEMENT (PURSUANT TO ANTICOUNTERFEITING CONSUMER PROTECTION ACT OF 1996, PUB. L. NO 104 - 153 § 3, 110 STAT. 1386 AND RICO § 1962(d)), INJUNCTIVE RELIEF, AND BREACH OF AN ORAL CONTRACT MADE IN FLORIDA**

-1-

## COMPLAINT

Plaintiff, Franz A. Wakefield, ("WAKEFIELD"), *Pro Se* for this Complaint, alleges as follows:

## PARTIES

PLAINTIFF

1.   Plaintiff, Franz A. Wakefield [trade secret and copyright owner] is now, and at all times mentioned in this complaint; a citizen of the United States, born on the date of August 31, 1974, and residing at 17731 North West 14th Court Miami-Dade, County Florida 33169.


DEFENDANTS

2.   Defendant, Sarah Jessica Parker, "SJP," [individual trade secret appropriator, racketeer, and copyright infringer] is now, and at all times mentioned in this complaint an Entertainer who is represented by Ira Shreck, Esq. of Shreck Rose Dapello Adams & Hurwitz LLP located 1790 Broadway 20th Floor in New York, New York 10019.


3.      Defendant, Steve Jobs [individual trade secret appropriator, racketeer, and copyright infringer] is now, and at all times mentioned in this complaint, the CEO and Co-Founder of Apple Inc. employed at 1 Infinite Loop in Cupertino, California 95014.


4.      Defendant, Apple Inc. [electronic merchandise and software development

2

COMPLAINT                                                    U. S. District Court Northern District Ca.

corporation, trade secret appropriator, racketeer, and copyright infringer] is now, and at all times mentioned in this complaint a corporation which conducts its principal place of business at 1 Infinite Loop located at Cupertino, California 95014.

## JURISDICTION AND VENUE

5.      The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, The California Uniform Trade Secret Act §§ 3426 – 3426.11, the Federal Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq (*where jurisdiction is conferred pursuant to Sections 1338(a) and 1338(b) of the Judicial Code (28 U.S.C. §§ 1338 (a), 1338(b); where the venue is under Sections 1391(c) and 1400(a) of Judicial Code (28 U.S.C. §§ 1391(c), 1400(a))*). This court also has jurisdiction pursuant to violations of 18 U.S.C. § 1962(d) and to the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. No 104-153 § 3, 110 Stat. 1386 of the Racketeer Influenced and Corrupt Organizations Act (*RICO*).

## FACTS

INTRODUCTION

In August of 1989, Plaintiff, "WAKEFIELD" won The Congressional Art Award, after placing first in the 17th Congressional District Arts Competition which Congressman William Lehman sponsored. "WAKEFIELD'S" artwork was displayed for one year in a corridor of the U.S. Capitol. A special reception honoring "WAKEFIELD" was held on

Capitol Hill where he was honored by Congressman William Lehman, entertainment film stars Robert Downey, Jr. and Sarah Jessica Parker.

During the time where "WAKEFIELD" interacted with Congressman William Lehman, as a part of the ceremony and award, "WAKEFIELD" confided in him and asked Congressman Lehman to write a letter to The Washington and North Miami Field Offices of the FBI notifying them that "WAKEFIELD" would be calling to disclose his trade secrets to the FBI, some of which "WAKEFIELD" believed constituted National Security issues. These trade secrets included the portable digital media device iPod™, the music/media management software application process iTunes™ (*iTunes™ Store*), and what "WAKEFIELD" referred to as iPhone™ (*a Smart Mobile Phone, with a Smart Screen™ Interface*), iBOONKA!™ a cartoon character used as a mobile Smart Toy, The *ClickVideoShop*™ software application process which utilizes various media, including video, and Multifunctional Hotspots™. Other trade secrets were contained in "WAKEFIELD'S" sketch book and documented by "WAKEFIELD" in his visual art pieces. "WAKEFIELD" also requested that the Congressman "invest" in him and provide him with oversized canvases, a professional sketch book, supplies, & shatter proof/waterproof framing, so that he could create large visual art and a detailed sketch book of the various trade secrets that he created. He also requested that the FBI seize the art (*the oversized art and the sketch book*) that he created at New World School of the Arts during 1990 – 1991, that portrayed these trade secrets and requested that the discussion and information be maintained in the highest confidence because of the

4

National Security ramifications that concerned "WAKEFIELD." Congressman Lehman agreed to "WAKEFIELD'S" requests and during the period 1989 – 1990 had his assistant, Mrs. Tonya Martin (*who later married and took the name Mrs. Tonya Martin-Pekel*) create the letter which contained the names, a brief description of "WAKEFIELD'S" trade secrets, notice of "WAKEFIELD'S" intention of contacting the agency, and instruction to seize the art which contained the visual representations of "WAKEFIELD'S" trade secrets that would be created by "WAKEFIELD."

"WAKEFIELD" created the oversized art and sketch book of his trade secrets during 1990 – 1991 at New World School of the Arts located at 25 North East 2nd Street in Miami, Florida and persons during this same time period, representing themselves as FBI agents seized "WAKEFIELD'S" art and sketch book from the school.

"WAKEFIELD" made telephonic and personal contact with various Field Offices of The FBI to document, and report his trade secrets, business intentions, planned alliances/strategies to commercialize, and the theft of his intellectual rights during the following years: 1990, 1991, 1993, 1999, 2000, 2002, and other years to date.

During the ceremony in 1989 and years after "WAKEFIELD" developed a friendship with Defendant Entertainer Sarah Jessica Parker "SJP" and was graced with her appearance at New World School of the Arts, Norland Senior High School, The University of Florida, in Miami, and on "WAKEFIELD'S" internships/co-ops while he attended college.

"WAKEFIELD" over the course of several years made a trade secret deal with

"SJP" to commercialize his trade secrets iPod™ (*including all models…classic, nano, mini, shuffle, video, touch, and photo*), iTunes™ (*iTunes™ Store*), the iPhone™, and other products and brands that "WAKEFIELD" created. In the agreement made with "SJP" "WAKEFIELD" was to be paid 2% of the gross revenues (*Past and Future*) generated by ALL of the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ products and their constituent services and applications, including accessories sold by Apple Inc., or sold by authorized third parties through license. In the agreement made with "SJP," "WAKEFIELD" was to be paid for past sales of iPOD™, iTunes™, and the accessories including the iPhone™ after the release of the first iPhone™ product line.

On October 27, 2006, by email, Ira Schreck, Esq. in care of "SJP" wrote that Ms. Parker has no recollection of the agreement or matters concerning iPod™ and "WAKEFIELD'S" trade secrets. The Defendants were put on formal Notice by "WAKEFIELD" of the theft of his intellectual rights on October 19, 2009, by Express Mail.

6.     Plaintiff, "WAKEFIELD," an individual inventor, innovator, and the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ trade secrets owner, brings this action to enjoin Defendants from the continued misappropriation of his trade secrets being commercialized in the open market through the design, development, manufacture, marketing, and sale of the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ product lines. "WAKEFIELD" is informed and believes, and based thereon alleges that Defendants have

COMPLAINT                                   U. S. District Court Northern District Ca.

disclosed, and continue knowingly and willfully to disclose and misappropriate, proprietary information on their Internet websites, and in their marketing, advertising, and sales campaigns. Thus causing harm to "WAKEFIELD."

7.     The named Defendants, continue their unauthorized misappropriation and infringement, which they either obtained by improper means or knew or should have known was obtained by other(s) by improper means; despite the fact of "WAKEFIELD'S" written DEMAND for payment and cease and desist were sent to the Defendants; he has yet to receive payment, communication, or a response to his letters.

8.     Defendants' actions by transmitting, manufacturing, & selling "WAKEFIELD'S" trade secrets has threatened the financial stability of the broadcasting, digital media device, and software industries and has undermined The Constitution of the United States, Article I, § 8 which states that:

> "The Congress shall have Power..to Promote the progress of Science and
> useful Arts, by securing for limited times to Authors and Inventors the ex-
> clusive right to their respective Writings and Discoveries."

This limited grant is a means by which an important public purpose may be achieved. This purpose is also reinforced by California's Uniform Trade Secret Act. Moreover, if Defendants are not restrained and enjoined and if "WAKEFIELD" is not properly compensated for the misappropriation & commercialization of his trade secrets and

7

copyrights, it will be a crippling domino effect to the future of technological innovation in the broadcasting, the consumer electronics, and the software industries, and it will be a fatal blow to the independent innovator and entrepreneur in America, the cornerstone of The American Economy and its historical foundations.

ALLEGATIONS

9.     On January 9, 2001, Apple Inc. introduced iTunes™ an ambidextrous management software application created and used to organize, store, playback, access, and transfer music, video, and various media data onto digital media devices from desk-top computers. On October 23, 2001, Apple Inc. launched a product with an enticing promise: You can carry an entire music collection in your pocket. It was called the iPod™. On June 29, 2007, Apple Inc. released the iPhone™ a mobile smart phone with a signature touch screen interface. "WAKEFIELD'S" trade secret ergonomic designs, techniques and processes were misappropriated and incorporated in the products to create a sleek and "sexy" bundle of digital media devices and software applications that would make it effortless to communicate, carry, manage, access, and use digital information. "WAKEFIELD'S" detailed trade secret product specifications and marketing method was communicated by "SJP" to the Defendant Steve Jobs, "Jobs," and employed in the open market by the Defendant Apple Inc., "Apple."

10.     Before allowing his trade secrets and copyright works to be used by the Defendants,

- -   COMPLAINT                                      --   U. S. District Court Northern District Ca.

"WAKEFIELD" in confidence documented his trade secrets with the Congressman William Lehman and the Federal Bureau of Investigations. "WAKEFIELD" also requested that The FBI seize his visual art and sketch book which contained the documented secrets and requested that the FBI surveil and record him as he completed the trade secret deals to commercialize the secrets into products with "SJP" and other representatives. "WAKEFIELD" communicated the trade secret deal with the Defendant "SJP," his trade secrets, which includes the IDENTICAL name brands for iPod™, iTunes™ (*iTunes™ Store*), and the iPhone™, along with drawings and paintings of the IDENTICAL product designs and various models in various views, and provided description of the device products and processes, their method, technique and process of functionality to Congressman William Lehman in 1989, and the FBI in 1990, 1991, 1993, 1999, 2000, 2002, and other years to date.

11.    As of September 9, 2009, more than 220,000,000 iPods™ have been sold worldwide, making it the best-selling digital audio player series in history. As of the date June 19, 2008, Apple reported that music sales on its iTunes™ Store topped 5 billion songs and that visitors are renting and purchasing more than 50,000 movies each day. Apple sold 6.1 million original iPhone™ units over five quarters. The company sold 3.8 million iPhone™ 3G units in the second quarter of fiscal 2009, ending March 2009, totaling 21.4 million iPhones™ sold to date. Sales in Q4 2008 surpassed temporarily those of Rim's Blackberry sales of 5.2 million units, which made Apple briefly the third largest

9

mobile phone manufacturer by revenue, after Nokia and Samsung.

12.    "WAKEFIELD'S" trade secret ergonomic designs, techniques and processes which was created in as early as 1989 were misappropriated by the Defendants and incorporated into these aforementioned products (the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ product lines) to create a sleek and "sexy" bundle of digital media devices and software applications that would make it effortless to communicate, carry, manage, access, and use digital information. "WAKEFIELD'S" detailed trade secret product specifications and marketing methods which was created during the time period 1990 – 1991 is currently being used illegally by the Defendants in the commercialization of the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ product lines.

FIRST CAUSE OF ACTION

BREACH OF AN ORAL CONTRACT MADE IN FLORIDA
(*Statute of limitations: 4 years in Florida for enforcing an Oral Contract*)

13.    "WAKEFIELD" repeats and realleges the allegations of paragraphs 1 through 12 of this Complaint and incorporates them herein by reference.

14.    During the years 1999 – 2000, Plaintiff Franz A. Wakefield, "WAKEFIELD," and the Defendant Sarah Jessica Parker, "SJP," orally agreed in Gainesville and Miami, Florida as follows:

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.      Plaintiff, "WAKEFIELD," would tender his trade secrets and copyrighted

works related to the commercialization of the iPod™, iTunes™ (*iTunes™*

*Store*), and the iPhone™ product lines in confidence to "SJP" in drawings and

recorded discussions; and allow any of his intellectual property relating to these

products already in the possession of "SJP" based on her visits and

documentation of "WAKEFIELD" while he completed his art work and

performances at New World School of the Arts in Miami, Florida during 1990 –

1991 to remain in her custody for the purpose of presenting the products to

Steve Jobs, CEO and Cofounder of Apple Inc. to determine if he and the

company would be interested in creating a business deal to commercialize the

products.


b.      Defendant, Sarah Jessica Parker, "SJP," would:

        1.      Create a marketing company that would create in confidence a

                marketing presentation of "WAKEFIELD'S" trade secrets and

                copyrighted works.

        2.      Attempt to commercialize iPod™, iTunes™ (*iTunes™ Store*),

                and iPhone™ by approaching Steve Jobs directly for business

                alliance, contingent on "JOBS" and Apple's, "APPLE'S"

                acceptance of the requirements set by "WAKEFIELD'S" trade

                secrets and the agreed payment of "WAKEFIELD" 2% of the gross

11

revenues generated by ALL of the iPod™, iTunes™ (*iTunes™ Store*), and iPhone™ product lines, their constituent services and applications, including accessories sold by Apple Inc., or sold by authorized third parties through license.

3.    Sell digital songs a la carte utilizing iTunes™ and the iTunes™ Store at $0.99 (which may increase based on statistical studies).

4.    Maintain an interest bearing forensically accounted bank account with "WAKEFIELD'S" funds until the release of the first iPhone™ product line.

5.    Be paid a percentage on top of "WAKEFIELD'S" 2% for brokering the deal which should not exceed 5% in total.

15.    "WAKEFIELD" performed said agreement to the extent necessary to require that the Defendant(s) follow "WAKEFIELD'S" trade secret methods, and device for creating the products and payment of "WAKEFIELD."

16.    Defendant "SJP" has breached said agreement by misappropriating, and Disseminating/transmitting "WAKEFIELD'S" trade secrets, copyrights, and intellectual property and by failing to compensate "WAKEFIELD" as agreed.

- -    COMPLAINT                                    --    U. S. District Court Northern District Ca.

## SECOND CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS
(As Governed by the California Uniform Trade Secrets Act §§ 3426 – 3426.11)

17.    "WAKEFIELD" repeats and realleges the allegations of paragraphs 1 through 16 of this Complaint and incorporates them herein by reference.

18.    "WAKEFIELD" has adopted reasonable measures as described above to maintain the secrecy of his trade secrets relating to the portable digital media device iPod™, the music/media management software application process iTunes™ (*iTunes™ Store*), and what "WAKEFIELD" referred to as iPhone™ (*a Smart Mobile Phone, with a Smart Screen™ Interface*), iBOONKA!™ a cartoon character used as a mobile Smart Toy, The *ClickVideoShop*™ software application process which utilizes various media, including video, and Multifunctional Hotspots™ and other trade secrets which were contained in "WAKEFIELD'S" sketch book and documented by "WAKEFIELD" in his visual art pieces.

19.    The Defendants have invested substantial money in the development, manufacture, marketing, sale, and distribution of the iPod™, iTunes™ (*iTunes™ Store*), and the iPhone™ product lines, which have generated substantial revenues, accolades, and accomplishments in the International Market. "WAKEFIELD'S" trade secrets as embodied in the iPod™, iTunes™ (*iTunes™ Store*), and the iPhone™ product lines

13

derives substantial independent economic value both actual and potential from not being

known and incorporated in other competing products, from not being generally known to,

and not being readily ascertainable by proper means by other persons or entities who can

obtain economic value from its disclosure or use.


20.   "WAKEFIELD'S" trade secrets as embodied in the iPod™, iTunes™ (*iTunes*™

*Store*), and the iPhone™ product lines are valuable proprietary property of

"WAKEFIELD."


21.   Defendants have been put on written Notice, knew, and should have known when

they disseminated, transmitted, accepted, designed, marketed, manufactured, and sold

iPod™, iTunes™ (*iTunes*™ *Store*), and the iPhone™ without compensating

"WAKEFIELD," that it was an unauthorized use of "WAKEFIELD'S" trade secrets,

copyrights and other intellectual property.


22.   Defendants actions as described herein constitutes the willful misappropriation of

"WAKEFIELD'S" trade secrets.


23.   As a result of the Defendants' misappropriation of "WAKEFIELD'S" trade secrets,

"WAKEFIELD" has suffered and continues to suffer irreparable injury, for which there is

no adequate remedy at law.

14

24.     Unless enjoined by the Court, Defendants will continue their misappropriation of

"WAKEFIELD'S" trade secrets by the commercialization of iPod™, iTunes™ (*iTunes*™

*Store*) and iPhone™ in the International Market.


## THIRD CAUSE OF ACTION

VIOLATION OF RACKETEER INFLUENCED & CORRUPT ORGANIZATIONS ACT
(Pursuant to 18 USC § 1962 (d) & The
Anticounterfeiting Consumer Protection Act of 1996)


25.     "WAKEFIELD" repeats and realleges the allegations of paragraphs 1 through 24 of

this Complaint and incorporates them herein by reference.


26.     Sometime during March of 1996, "WAKEFIELD" completed an original software

process, and technique named *ClickVideoShop*™ (1. Copyright Registration: Txu1-269-

446), in the year 2000 he completed a 3D Digital character design called "iBOONKA!"™

(2. Copyright Registration: Vau 489-900), and in the year 2000 "WAKEFIELD"

completed a technique and process for "iBOONKA!"™ the mobile smart toy (3.

Copyright Registration: Txu 1-005-910); which was derived from "WAKEFIELD'S"

trade secrets that he created in as early as 1989 and was document with Congressman

William Lehman. "WAKEFIELD" received a patent (U.S. Patent No: 007,162,696 B2)

for the software invention *ClickVideoShop*™ on January 09, 2007. Collectively copyrights

1 – 3 comprise the "infringed original copyrighted works."

        Said "infringed copyrighted works" was the original effort of "WAKEFIELD" and

15

represented the use of his skill, judgment and labor. Immediately after completion of said "infringed copyrighted works" Plaintiff, "WAKEFIELD" fixed the "original copyrighted works" in a tangible medium:

1. On or about April 30, 1996 the ClickVideoShop™ Software was fixed in the form of a tape,

2. In July of 2000 the 3D Digital character design of "iBOONKA!"™ was completed and fixed in the form of a CD and print, and

3. On August 6, 2001, "iBOONKA!"™ the mobile smart toy technique and process was fixed in the form of a floppy disk and print.

The fixed copies of said "infringed original copyrighted works," was made and deposited with the Registrar of Copyrights before such "original copyrighted works" was publicly performed or otherwise published. "WAKEFIELD" has complied with all requirements of the Federal Copyright laws with respect to fixation and publication.


27.    Defendants have willfully and criminally infringed "WAKEFIELD'S" copyrights as described by the Racketeer Influenced and Corrupt Organizations Act (RICO) pursuant to 18 USC § 1962(d) & the Anticounterfeiting Consumer Protection Act of 1996, Pub. L. No. 104 – 153 § 3, 110 STAT. 1386; when they misappropriated "WAKEFIELD'S" trade secrets and intellectual property and commercialized the entire iPod™, iTunes™ (*iTunes Store*) and iPhone™ product lines.

28.     The Defendants knowingly infringed "WAKEFIELD'S" copyrights by

manufacturing and placing on the market the iPod™, iTunes™ (*iTunes Store*) and

iPhone™ product lines, which contains a substantial portion of "WAKEFIELD'S"

copyrighted works, namely the use of Multifunctional Hotspots as described by the

*ClickVideoShop*™ copyright without first obtaining a license. **See. Exhibits 1 – 6.**


PRAYER FOR RELIEF

WHERFORE, "WAKEFIELD" prays for judgment:

1.      That Defendants have willfully misappropriated the trade secrets (*by breaching an*

*oral contract made between "WAKEFIELD" and "SJP" in Florida*) of "WAKEFIELD,"

and have violated the Racketeer Influenced and Corrupt Organizations Act (*RICO and*

*RICO Copyright Infringement*).


2.      Entering a temporary restraining order and preliminary and permanent injunctions,

enjoining and restraining (*to stop the copying, duplicating, licensing, selling, distributing,*

*publishing and otherwise marketing*) Defendants, their officers, directors, principles,

agents, servants, employees, attorneys, successors and assigns and all those acting in

concert, combination or participation with any of them either directly or indirectly, singly

or together, from making any further use or otherwise disclosing or distributing any

proprietary and trade secret information, related to "WAKEFIELD'S" trade secrets

iPod™, iTunes™ (*iTunes™ Store*) and iPhone™.

3. Awarding to "WAKEFIELD" the costs of this action, reasonable attorneys fees, and such further and other relief as is found just and proper.

**Respectfully submitted,**

Dated:  **November 13, 2009**

**Franz A. Wakefield,** *Pro Se*
**COOLTvNETWORK.COM™, Inc.**
**Powered By:** *C l i c k V i d e o S h o p* ™
**The Software Enabling The Global Economy**
**And Its' Just A Click Away!**
**The** *ClickVideoShop* ™ **Patent: U.S.** 007,162,696 B2.
**17731 North West 14ᵗʰ Court**
**Miami, Florida 33169**
**Tele: (305) + 206.4832**
**franzwakefield@cooltvnetwork.com**



**Attached Exhibits**

18

# CERTIFICATE OF SERVICE

**CASE NAME:**

_**FRANZ A. WAKEFIELD, v. APPLE INC., STEVE JOBS, AND SARAH JESSICA PARKER**_

**CASE NO:**

**I CERTIFY THAT ON <u>NOVEMBER 16, 2009</u> A COPY OF THE <u>COMPLAINT</u> WAS SERVED, BY EXPRESS U.S. MAIL AND BY FIRST CLASS MAIL ON THE PERSONS/ENTITY LISTED BELOW IN THE <u>SERVICE LIST</u> (<u>Defendants to be served within 120 days from the filing of the Complaint pursuant to Federal Rules of Civil Procedure.</u>**

_**PRO SE**_**, PLAINTIFF**

1

## PROOF OF SERVICE

2

I, *Pro Se* **PLAINTIFF,** MR. FRANZ A. WAKEFIELD, AM OVER THE AGE OF 21 AND

3

4

AM THE PRO SE APPELLANT IN THIS ACTION. MY ADDRESS IS 17731 NORTH WEST 14TH

5

COURT MIAMI, FLORIDA 33169.

6

7

ON **November 16, 2009**, I SERVED IN THE MANNER INDICATED BELOW, THE

8

FOREGOING DOCUMENT(S) DESCRIBED AS:

9

## COMPLAINT

10

11

ON THE PARTY IN THIS ACTION AND FILING THE SAME WITH THE UNITED STATES

12

DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA BY PLACING A TRUE AND

13

CORRECT COPY THEREOF ENCLOSED IN A SEALED ENVELOPE ADDRESSED AS

14

FOLLOWS:

15

## "SEE ATTACHED SERVICE LIST"

16

17

18

(XX) (BY **EXPRESS MAIL** & **FIRST CLASS U.S. MAIL**) I *PRO SE* APPELLANT, CAUSED

19

SUCH ENVELOPE TO BE DEPOSITED WITH THE UNITED STATES POST OFFICE IN MIAMI,

20

FLORIDA, WITH POSTAGE THEREON FULLY PREPAID.

21

22

23

24

25

26

27

28

- - COMPLAINT                                         -- U. S. District Court Northern District Ca.

1

<u>Service List</u>

2

"WAKEFIELD" vs. APPLE INC., STEVE JOBS, & SARAH JESSICA PARKER

3

4

CASE №:

5

6

**CLERK OF THE COURT**

7

**UNITES STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA**

8

**280 SOUTH 1ST STREET**

9

**SAN JOSE, CALIFORNIA 95113**

10

11

**STEVE JOBS, CEO AND COFOUNDER**

12

**APPLE INC.**

13

**1 INFINITE LOOP**

14

**CUPERTINO, CALIFORNIA 95014**

15

**TELE: 800-275-2273**

16

17

**IRA SHRECK, ESQ.**

18

**IN CARE OF SARAH JESSICA PARKER**

19

**SHRECK ROSE DAPELLO & ADAMS & HURWITZ LLP**

20

**1790 BROADWAY 20TH FLOOR**

21

**NEW YORK, NEW YORK 10019**

22

**TELE: 212-832-1977**

23

24

25

26

Franz A. Wakefield, *Pro Se*

27

28

COMPLAINT                    U. S. District Court Northern District Ca.